**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

FRESNO COMMUNITY HOSPITAL AND
MEDICAL CENTER, *et al.*,

      Plaintiffs

      v.

ALEX M. AZAR II, Secretary, United States
Department of Health and Human Services,

      Defendant

---

Civil Action No. 18-867 (CKK)

**MEMORANDUM OPINION**
(February 28, 2019)

This case concerns the decision of Defendant, the Secretary of the United States

Department of Health and Human Services (the "Secretary"), to implement a +0.4588%

adjustment to the standardized amount for the Medicare Hospital Inpatient Prospective Payment

System ("IPPS") for fiscal year 2018. Plaintiffs, hundreds of Medicare-participating providers of

hospital services, argue that an adjustment of at least +1.1588% was required in order for the

Secretary not to continue unlawfully a prior -0.7% recoupment adjustment made in fiscal year

2017. Defendant has moved to dismiss Plaintiffs' Complaint for lack of jurisdiction. Defendant

contends that the Secretary made the 2018 adjustment under Section 7(b) of the TMA,

Abstinence Education, and QI Programs Extension Act of 2007 ("TMA"). Pub. L. No. 110-90,

121 Stat. 984, as amended.  And, Congress has prohibited courts from reviewing the Secretary's

determinations and adjustments made under Section 7(b) of the TMA.

Upon consideration of the pleadings[1], the relevant legal authorities, and the record as a whole, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion. Moving beyond artful pleading, at their foundation, Counts 1, 4, and 5 of Plaintiffs' Complaint ask the Court to review, pursuant to various statutes, a determination or adjustment made by the Secretary under Section 7(b) of the TMA. And, Congress has precluded courts from reviewing determinations and adjustments made by the Secretary under Section 7(b) of the TMA. Additionally, these claims do not fit within the narrow ultra vires exception to Congress' bar on judicial review because the Secretary did not patently misconstrue the TMA in implementing a +0.4588% adjustment in 2018. Accordingly, Defendant's motion is GRANTED IN PART, and Counts 1, 4, and 5 of Plaintiffs' Complaint are DISMISSED. However, Counts 2 and 3 of Plaintiffs' Complaint pertain to the Secretary's failure to exercise his "exceptions and adjustments" discretion under 42 U.S.C. § 1395ww(d)(5)(I), not to the Secretary's adjustment under TMA § 7(b). And, Defendant has failed to establish that these claims are inextricably intertwined with Plaintiffs' barred claims. Accordingly, Defendant's motion is DENIED IN PART, and Plaintiffs may proceed with Counts 2 and 3 of their Complaint.

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Mem. in Support of Def.'s Mot. to Dismiss for Lack of Juris. ("Def.'s Mot."), ECF No. 7-1;
- Pls.' Mem. in Support of Pls.' Opp'n to Def.'s Mot. to Dismiss for Lack of Juris. ("Pls.' Opp'n"), ECF No. 12; and
- Def.'s Reply in Support of Def.'s Mot. to Dismiss for Lack of Juris. ("Def.'s Reply"), ECF No. 14.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. LEGAL BACKGROUND

The crux of this case concerns whether or not the Secretary made a permissible adjustment to the standardized amount used to calculate inpatient payment rates in fiscal year 2018. The Secretary made a +0.4588% adjustment; but, Plaintiffs argue that the Secretary should have made a +1.1588% adjustment in order to account for the additional -0.7% adjustment that had been made in fiscal year 2017. While the question appears relatively simple on its face, the Court must account for the complex regulatory scheme underlying the dispute over the Secretary's 2018 adjustment.

The Medicare Act establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease. Compl., ECF No. 1, ¶ 26 (citing 42 U.S.C. § 1395c). The Centers for Medicare & Medicaid Services ("CMS") implement the Medicare program. Under Medicare Part A, hospitals are compensated for providing inpatient services and certain other institutional services to those covered by Medicare. *Id.* at ¶ 28. Effective for cost reporting years on or after October 1, 1983, Congress enacted statutes requiring the Secretary to implement an inpatient prospective payment system ("IPPS") to reimburse hospitals for inpatient hospital operating costs. *Id.* at ¶ 30. Under IPPS, hospitals are reimbursed for inpatient services at a fixed amount for each Medicare patient discharged from the hospital according to prospectively determined, nationally applicable payment rates. *Id.*

Under the initial implementation of IPPS, hospitals were reimbursed for inpatient services according to the classification of the Medicare patient's condition into one of many diagnosis related groups ("DRGs"). *Id.* at ¶ 31 (citing 42 U.S.C. § 1395ww(d)(1)-(2)). In fiscal year 2008, the DRG system was updated, becoming the Medicare Severity DRG ("MS-DRG") classification system, to increase the number of diagnosis related groups from 538 to 745. *Id.*

Each MS-DRG is assigned a relative weight reflecting the average relative resources needed to treat patients in that MS-DRG. The MS-DRG weight is multiplied by a base payment rate or "standardized amount." That number is then adjusted for other factors to provide the final IPPS payment amount. *Id.* Congress requires the Secretary to adjust the MS-DRG classification and relative weights annually. *Id.* at ¶ 32 (citing 42 U.S.C. § 1395ww(d)(4)(C)(i)). Congress also authorizes the Secretary "'provide by regulation for such other exceptions and adjustments to such payment amounts under [section 1395ww(d)] as the Secretary deems appropriate.'" *Id.* (quoting 42 U.S.C. § 1395ww(d)(5)(I)).

In changing from the DRG to the MS-DRG system, CMS recognized the potential for increases in aggregate payments due to more thorough documentation and coding. *Id.* at ¶ 33. The Medicare Act permits CMS to prospectively adjust IPPS standardized amounts, or base payment rates, when a change to the DRG classification is likely to result in higher aggregate IPPS payments due to changes in coding and classification. *Id.* (citing 42 U.S.C. § 1395ww(d)(3)(A)(vi)). Pursuant to that authority, CMS adopted adjustments to the IPPS standardized amounts to prospectively eliminate the aggregate increase in payments that would flow from more thorough documentation and coding with the MS-DRG system. *Id.* at ¶ 34.

But, a few months after CMS adopted these adjustments, Congress enacted the TMA. *Id.* at ¶ 35 (Pub. L. No. 110-90, 121 Stat. 984 (2007)). TMA § 7(a) required CMS to reduce the IPPS standardized amount by -0.6% for fiscal year 2008 and to adopt an adjustment of -0.9% for fiscal year 2009. *Id.*

TMA § 7(b) required further adjustments. Under § 7(b)(1)(A), the TMA instructed the Secretary to make additional prospective adjustments based on a retrospective evaluation of fiscal years 2008 and 2009. *Id.* at ¶ 35 (citing TMA § 7(b)(1)(A)). Prospective adjustments made

under this section do not recoup or repay for past miscalculations; instead, the adjustments prospectively eliminate the effect of the coding and classification changes. *Id.* (citing 42 U.S.C. § 1395ww(d)(3)(A)(vi)). Unlike the prospective adjustments under TMA § 7(b)(1)(A), under § 7(b)(1)(B), the Secretary was instructed to determine whether any additional adjustments were necessary to recoup or repay any increase or decrease in the aggregate 2008 and 2009 payments and to implement appropriate recoupment or repayment adjustments for discharges occurring during fiscal years 2010, 2011, and 2012. *Id.* at ¶ 36 (citing TMA § 7(b)(1)(B)). The recoupment or repayment adjustments in fiscal years 2010, 2011, and 2012 were not permanent and could not be included in the determination of standardized amounts for future years. *Id.* at ¶ 36 (citing TMA § 7(b)(2)).

Finally, in the TMA, Congress limited administrative or judicial review of the Secretary's implementation of the adjustments made under TMA §7(b). Specifically, Congress mandated that "[t]here shall be no administrative or judicial review under [42 U.S.C. § 1395oo] or otherwise of any determination or adjustments made under this subsection." *Id.* at ¶ 38 (quoting TMA § 7(b)(5)).

In 2013, CMS announced that a prospective -3.9% adjustment to the IPPS standardized amount would need to be made under TMA § 7(b)(1)(A) to address the documentation and coding effects. *Id.* at ¶ 37 (citing 78 Fed. Reg. 27,486, 27,503 (May 10, 2013)). The TMA did not specify when this prospective adjustment must be made. So, CMS implemented a -2.0% adjustment for fiscal year 2012 and a -1.9% adjustment for fiscal year 2013. *Id.* Separately in 2013, pursuant to TMA § 7(b)(1)(B), CMS reduced the IPPS standardized amounts for fiscal years 2011 and 2012 to complete the recoupment of all overpayments made in fiscal years 2008 and 2009. *Id.* (citing 78 Fed. Reg. 27,504).

Because CMS did not phase in the prospective adjustments required under TMA §
7(b)(1)(A) until 2013, payments for fiscal years 2010, 2011, and 2012 were overstated. *Id.* at ¶
39 (citing 78 Fed. Reg. at 27,504). But, the TMA did not permit recovery of these overpayments
under TMA § 7(b)(1)(B) because that section was limited to recouping overpayments made in
2008 and 2009.

Accordingly, Congress passed the American Taxpayer Relief Act of 2012 ("ATRA") to
recoup the overpayments from fiscal years 2010, 2011, and 2012. *Id.* at ¶ 40 (Pub. L. No. 112-
240, 126 Stat. 2313 (2013)). The ATRA required CMS to make additional recoupment
adjustments totaling approximately $11 billion by fiscal year 2017 to account for overpayments
in 2010, 2011, and 2012. The ATRA limited these recoupment adjustments to discharges
"occurring only during fiscal years, 2014, 2015, 2016, and 2017." *Id.* (citing TMA §
7(b)(1)(B)(ii), amended by ATRA § 631(b)). The ATRA recoupment adjustment provision was
also subject to the TMA § 7(b)(2)'s limit on recoupment adjustments continuing for discharges in
years subsequent to the Congressional limit. *Id.* (citing TMA § 7(b)(2)).

In implementing the recoupment adjustments required under the ATRA, the Secretary laid
out a plan of escalating recoupment adjustments for fiscal years 2014, 2015, 2016, and 2017
based on actuarially projected discharges. *Id.* at ¶ 41. Under the Secretary's plan, the IPPS
standardized amount was reduced by -0.8% in 2014 and would escalate by -0.8% each year until
the cumulative adjustment equaled -3.2% by 2017. *Id.* (citing 78 Fed. Reg. at 27,504-05). The
Secretary believed that this plan of escalating adjustments would result in a full recoupment, by
fiscal year 2017, of the $11 billion in overpayments from 2010, 2011, and 2012. *Id.*

Following the Secretary's plan, in 2014 CMS adopted a -0.8% reduction in the IPPS
standardized amount. *Id.* (citing 78 Fed. Reg. 50,496, 50,515-17). Likewise, in 2015 and 2016,

CMS increased the ATRA recoupment adjustment by -0.8%, to -1.6% and -2.4% respectively. *Id.* (citing 79 Fed. Reg. 49,854, 49,873-74 (Aug. 22, 2014); 80 Fed. Reg. 49,236, 49,345 (Aug. 17, 2015)). While CMS did not propose a specific adjustment for fiscal year 2017, CMS reiterated its plan to implement a -0.8% recoupment adjustment in 2017 for a total adjustment of -3.2%. *Id.* at ¶ 42 (citing 80 Fed. Reg. at 49,345). In making these negative recoupment adjustments, CMS reaffirmed that "'the adjustment required under section 631 of the ATRA is a one-time recoupment of a prior overpayment, not a permanent reduction to payment rates. Therefore, any adjustment made to reduce rates in one year would eventually be offset by a positive adjustment, once the necessary amount of overpayment is recovered.'" *Id.* at ¶ 43 (quoting 79 Fed. Reg. at 49,873; 78 Fed. Reg. at 50,515; 80 Fed. Reg. at 49,345).

In 2015, Congress again amended TMA § 7(b) with the passage of Medicare Access and CHIP Reauthorization Act of 2015 ("MACRA"). *Id.* at ¶ 44 (Pub. L. No. 114-10, 129 Stat. 87 (2015)). Through MACRA, Congress instructed CMS to delay restoration of the estimated -3.2% ATRA recoupment adjustment that had been made to account for overpayments in 2010, 2011, and 2012. *Id.* Instead of a single positive adjustment of +3.2% in 2018, under MACRA, Congress implemented a schedule of restorative adjustments totaling +3.0% over six years from fiscal year 2018 to 2023. *Id*. CMS was left to implement any final restorative adjustment to fully offset the ATRA adjustments after 2023. *Id.* Specifically, as amended by MACRA, TMA § 7(b)(1)(B)(iii) requires the Secretary to: "'make an additional adjustment to the standardized amounts under such section 1886(d) of an increase of 0.5 percentage points for discharges occurring during each of fiscal years 2018 through 2023 and not make the adjustment (estimated to be an increase of 3.2 percent) that would otherwise apply for discharges occurring during

fiscal year 2018 by reason of the completion of the [ATRA recoupment] adjustments.'" *Id.* (quoting TMA § 7(b)(1)(B)(iii)).

Following the passage of MACRA, the Secretary realized that the planned -0.8% adjustment in 2017 would not fully recoup the $11 billion in overpayments from 2010, 2011, and 2012. *Id.* at ¶ 45. Accordingly, CMS proposed and finalized an ATRA adjustment of -1.5% for fiscal year 2017, -0.7% more than the previously estimated adjustment of -0.8%. With this additional recoupment adjustment, the total ATRA adjustment was -3.9% rather than the expected -3.2%. *Id.* (citing 81 Fed. Reg. 56,762 (Aug. 22, 2016)).

In 2016, Congress again amended TMA § 7(b) with the enactment of the 21st Century Cures Act. *Id.* at ¶ 46 (Pub. L. No. 114-255, 130 Stat. 1033 (2016)). 21st Century Cures reduced the 2018 fiscal year positive adjustment to the IPPS standardized amount to +0.4588%, rather than the +0.5% that was set in MACRA. *Id.* (citing TMA § 7(b)(1)(B)(iii), as amended by 21st Century Cures § 15005). The +0.5% adjustments required by MACRA for fiscal years 2019-2023 were left in place. *Id.*

In 2017, CMS proposed to implement the +0.4588% adjustment required by 21st Century Cures for fiscal year 2018. *Id.* at ¶ 47 (citing 82 Fed. Reg. 19,796 (Apr. 28, 2017)). Pursuant to 21st Century Cures and MACRA, CMS also stated its intent to propose +0.5% adjustments to the standardized amount for each fiscal year from 2019 to 2023. *Id.* (citing 82 Fed. Reg. at 19,816). Some commenters to the final rule opposed the proposed adjustment of +0.4588% for fiscal year 2018. These commenters highlighted that, in fiscal year 2017, CMS had issued an ATRA adjustment of -1.5%, which was -0.7% more than had been previously estimated. Accordingly, a positive adjustment of only +0.4588% would continue the additional -0.7% ATRA recoupment adjustment, leaving a larger permanent cut than Congress had intended. *Id.* at ¶ 48 (citing 82 Fed.

Reg. at 38,009). These commenters urged CMS to issue an additional +0.7% adjustment in fiscal year 2018 to account for this difference. *Id.* Some commenters further urged CMS to use its "exceptions and adjustments" discretion under 42 U.S.C. § 1395ww(d)(5)(I) to increase the 2018 adjustment by + 0.7%. *Id.* (citing 82 Fed. Reg. at 38,009).

Despite the comments to the proposed fiscal year 2018 adjustment, in 2018, CMS implemented a +0.4588% adjustment to begin compensating for the ATRA recoupment adjustments. *Id.* at ¶ 49 (citing 82 Fed. Reg. at 38,009). CMS's decision to implement the +0.4588% adjustment for fiscal year 2018 is the primary issue in this case.

## II. LEGAL STANDARD

Defendant moves to dismiss Plaintiffs' Complaint only under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. A court must dismiss a case when it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). In doing so, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted)); *See also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

"At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am.*

*Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). But, unlike most cases seeking dismissal for lack of jurisdiction, Defendant does not argue that Plaintiff improperly sought administrative or judicial review under 42 U.S.C. § 1395oo. Instead, Defendant argues that the preclusion statute in the TMA renders the Court without jurisdiction over what would be Plaintiffs' otherwise properly filed request for review of their Medicare payments under that statute and otherwise.

There is a "strong presumption that Congress intends judicial review of administrative action," which "can only be overcome by a clear and convincing evidence that Congress intended to preclude the suit." *Amgen, Inc. v. Smith*, 357 F.3d 103, 111 (D.C. Cir. 2004) (internal quotation marks omitted). Where, as here, the jurisdictional question turns on a statutory provision that allegedly precludes otherwise valid judicial review of an administrative action, the burden shifts and "[t]he party seeking to read a legislative scheme to preclude review bears the burden of demonstrating Congress' intent to do so." *Universal Health Servs. of McAllen, Inc., Subsidiary of Universal Health Servs., Inc. v. Sullivan*, 770 F. Supp. 704, 710 (D.D.C. 1991), *aff'd sub nom. Universal Health Servs. of McAllen, Inc. v. Sullivan*, 978 F.2d 745 (D.C. Cir. 1992). Accordingly, while Plaintiffs have the burden of establishing the Court's jurisdiction over their claims, Defendant has the burden of demonstrating that Congress intended to preclude an otherwise valid request for judicial review.

Plaintiffs present evidence that they filed timely and jurisdictionally valid administrative appeals, as well as requests for expedited judicial review of the fiscal year 2018 IPPS final rule in accordance with 42 U.S.C. § 1395oo. Compl., ECF No. 1, ¶¶ 17-21; *see also* Exs. 1 and 2, ECF Nos. 1-1 and 1-2. The Provider Review Reimbursement Board subsequently granted Plaintiffs' requests for expedited judicial review but found that it lacked authority to review the

validity of the adjustment at issue. *Id.* Defendant does not dispute that Plaintiffs' Complaint was properly filed and timely brought. Accordingly, the Court has jurisdiction to hear Plaintiffs' claims unless Defendant sustains its burden of showing that the Court's jurisdiction has been stripped away by the TMA's preclusion statute.

### III. DISCUSSION

Plaintiffs bring five claims against Defendant all related to the Secretary's decision to limit the fiscal year 2018 adjustment to +0.4588%, which allegedly failed to account for the additional, unexpected -0.7% recoupment adjustment made in 2017. In Count 1, Plaintiffs bring a claim under the Administrative Procedure Act ("APA"), the Medicare Act, and other statutes, arguing that the Secretary's failure to restore the additional -0.7% ATRA reduction in 2018 adjustment was unlawful. Compl., ECF No. 1, ¶¶ 67-70. In Count 2, Plaintiffs argue that Defendant violated the APA, the Medicare Act, and other statutes by failing to explain his reasons for not offsetting the additional -0.7% recoupment adjustment in 2018 through his "exceptions and adjustments" discretion. *Id.* at ¶¶ 71-72. In Count 3, Plaintiffs argue that Defendant violated the APA, the Medicare Act, and other statutes by failing to adequately address commenters' questions and requests concerning the use of the Secretary's "exceptions and adjustments" discretion in implementing the 2018 adjustment. *Id.* at ¶¶ 73-75. In Count 4, Plaintiffs request that the Court mandamus the Secretary to restore the additional -0.7% adjustment which was made in 2017. *Id.* at ¶¶ 76-77; *see* 28 U.S.C. § 1361. Finally, in Count 5, under the All Writs Act, Plaintiffs argue that they are entitled to an offsetting positive adjustment of +0.7% for fiscal year 2018. Compl., ECF No. 1, ¶¶ 78-79; *see* 28 U.S.C. § 1651. Defendant argues that all of Plaintiffs' claims should be dismissed based on the TMA's broad bar on judicial review of adjustments and determinations made under TMA § 7(b).

Plaintiffs have three arguments as to why the Court should not dismiss their claims. First Plaintiffs argue that they are not asking the Court to review the Secretary's +0.4588% adjustment for fiscal year 2018. Instead, they are asking the Court to review the Secretary's wrongful continuation of a -0.7% recoupment adjustment into fiscal year 2018. Accordingly, Plaintiffs allege that the TMA's preclusion statute does not apply. Second, Plaintiffs argue that under the ultra vires doctrine, the Court can review the Secretary's 2018 +0.4588% adjustment and continuation of the -0.7% recoupment adjustment because it is plainly unlawful. Third, Plaintiffs contend that, even if their other claims are unreviewable under the preclusion statute, their claims challenging the Secretary's failure to exercise his "exceptions and adjustments" discretion under 42 U.S.C. § 1395ww(d)(5)(I) are not barred by the preclusion statute. The Court will address each of Plaintiffs' arguments in turn.

### 1. Application of the TMA's Preclusion Statute

Section 7(b)(5) of the TMA provides that "[t]here shall be no administrative or judicial review under section 1878 of the Social Security Act (42 U.S.C. 1395oo) or otherwise of any determination or adjustments made under this subsection." TMA § 7(b)(5). Defendant argue that this preclusion statute strips the Court of jurisdiction to hear Plaintiffs' claims. Plaintiffs contend that the preclusion statute does not apply to their claims based on its express, limited scope. The Court concludes that the Secretary's decision to limit the fiscal year 2018 adjustment to +0.4588% falls within the plain language of the preclusion statute and is not subject to judicial review.

Preclusion statutes should be read narrowly in light of the strong presumption that "Congress intends the executive to obey its statutory commands and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command." *Bowen v.*

*Michigan Academy of Family Physicians*, 476 U.S. 667, 681 (1986); *Amgen, Inc.*, 357 F.3d at

112 (explaining that courts typically construe preclusion statutes to extend "no further than the

Secretary's statutory authority"). Because of the strong presumption in favor of judicial review,

there is a heavy burden on Defendant to show that Congress intended to bar judicial review of

Plaintiffs' claims. *See Bowen*, 476 U.S. at 672; *Universal Health Servs.*, 770 F. Supp. at 710

("The party seeking to read a legislative scheme to preclude review bears the burden of

demonstrating Congress' intent to do so.").

      Here, Plaintiffs contend that a narrow reading of the TMA's preclusion statute does not

bar judicial review of their claims. Plaintiffs have two primary arguments as to why the

preclusion statute does not bar judicial review of their claims. First, Plaintiffs contend that they

are not challenging the Secretary's +0.4588% adjustment made pursuant to TMA §

7(b)(1)(B)(iii); instead they are challenging the continuation of the -0.7% recoupment adjustment

under TMA § 7(b)(2), so the preclusion statute does not apply. Second, Plaintiffs argue that the

Secretary's continuation of a -0.7% recoupment adjustment is not authorized by the TMA, so it

cannot be a "determination or adjustment[] made under [TMA § 7(b)]." TMA § 7(b)(5). The

Court will address each of Plaintiffs' arguments.

      First, Plaintiffs argue that they do not challenge the Secretary's +0.4588% adjustment or

any other "determination or adjustments made under [TMA § 7(b)]." TMA § 7(b)(5). Instead,

Plaintiffs argue that they challenge only the Secretary's continuation of a -0.7% recoupment

adjustment. But, Plaintiffs' crafty pleading cannot hide the true nature of their claims. Nor can

Plaintiffs' clever phrasing be used to avoid a bar on judicial review. *See Synopsys, Inc. v. Matal*,

280 F. Supp. 3d 823, 834 (E.D. Va. 2017) (rejecting the plaintiff's "attempt to use artful pleading

to circumvent" a preclusion statute); *see also Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 389

(6th Cir. 2016) (warning against allowing a plaintiff to use "creative nomenclature as a semantic ploy to shroud the true essence of its theory and obtain jurisdiction over a claim that Congress did not intend to be brought").

The TMA's preclusion statute applies to "any determination or adjustments" made by the Secretary under TMA § 7(b). TMA § 7(b)(5). The preclusion statute does not place any limitations on the specific provision of TMA § 7(b) under which a determination or adjustment must have been made to be unreviewable. Instead, judicial review of any determination or adjustment made under any provision of § 7(b) is barred.

Plaintiffs take pains to assure the Court that they are not challenging the Secretary's +0.4588% adjustment in fiscal year 2018. Instead, Plaintiffs argue that they are challenging only the Secretary's decision to continue a -0.7% recoupment adjustment into fiscal year 2018 in violation of TMA § 7(b)(2). But, even if the Court were to credit Plaintiffs' contorted explanation of its claims, judicial review of those claims is still barred. Plaintiffs' assertion that the Secretary improperly determined that TMA § 7(b)(2) permitted him to continue a -0.7% recoupment adjustment into fiscal year 2018 still challenges a determination or adjustment made under TMA § 7(b). Accordingly, judicial review is barred.

That the bar on judicial review of the Secretary's determinations and adjustments applies to Plaintiffs' claims is especially clear when the Court considers that Plaintiffs ask the "Court to order the Secretary to apply a 0.7% positive adjustment, which is in addition to the positive 0.4588% adjustment mandated under section 7(b)(1)(B)(iii) of the amended TMA for FFY 2018 that the Secretary has stated he will make, resulting in a total positive adjustment of 1.1588%." Compl., ECF No. 1, ¶ 10. In order to grant Plaintiffs' requested relief, the Court would need to order the Secretary to make a different adjustment for 2018 than the one that he decided was

required. To order the Secretary to make a different adjustment than the one he intended would necessarily require the Court to review an adjustment made under TMA § 7(b), which is prohibited by the preclusion statute. *See* TMA § 7(b)(5). Accordingly, Plaintiffs' claims fall under the clear language of the TMA's preclusion statute.

Second, Plaintiffs contend that the Secretary continued the -0.7% recoupment adjustment into fiscal year 2018 "in violation of the explicit prohibition set forth at TMA section 7(b)(2)." Pls.' Opp'n, ECF No. 12, 12. Section 7(b)(2) of the TMA states that "[a]n adjustment made under paragraph (1)(B) for discharges occurring in a year shall not be included in the determination of the standardized amounts for discharges occurring in a subsequent year." TMA § (7)(b)(2). In fiscal year 2017, the Secretary made a -1.5% recoupment adjustment, rather than the anticipated -0.8% adjustment, in order to account for overpayments from fiscal years 2010, 2011, and 2012. The -1.5% recoupment adjustment resulted in an additional -0.7% adjustment for fiscal year 2017. Plaintiffs contend that the +0.4588% adjustment mandated by Congress for fiscal year 2018 did not take into account this additional -0.7% adjustment made in 2017. Accordingly, by implementing only the required +0.4588% adjustment, Plaintiffs argue that the Secretary unlawfully included the -0.7% adjustment from 2017 in the determination for the standardized amounts for discharges occurring in 2018. *See* TMA § 7(b)(2). Plaintiffs argue that the 2018 adjustment could not have been "made under" TMA § 7(b) if it was made "in violation" of TMA § 7(b). Pls.' Opp'n, ECF No. 12, 14. As the adjustment was not "made under" TMA § 7(b), Plaintiffs argue that the preclusion statute does not apply. Plaintiffs' argument fails for at least three reasons.

First, under the plain language of the preclusion statute, "[t]here shall be no administrative or judicial review … of any determination or adjustments made under [TMA §

7(b)]." TMA § 7(b)(5). Accordingly, the preclusion statute applies to *any* determination or adjustments made under TMA § 7(b). The preclusion statute does not apply only to *proper* determinations or adjustments made under TMA § 7(b). And, the Court will not read an additional condition into the statute when Congress clearly intended the bar to apply to *any* determination or adjustment under TMA § 7(b). *See Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (refusing to read an absent word into a statute).

Second, under Plaintiffs' reading of the preclusion statute, the statute would be robbed of much of its power. The Court finds that the use of the word "any" shows that Congress intended to draft a broad preclusion statute. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015) (finding that, in a different statutory provision, "the word 'any' demands a broad interpretation"). If the Court were to allow parties to evade the preclusion statute simply by alleging that the Secretary's determination or adjustment violated the statute in some way, the preclusion statute would apply to only a narrow and limited number of claims. Even taking account of the presumption in favor of judicial review, such a constricted interpretation of the preclusion statute is not supported by the statute's plain language.

Nor is such a constricted interpretation of the TMA's preclusion statute supported by the cases cited by Plaintiffs. Plaintiffs cite *Parkview Medical Associates, L.P. v. Shalala*, 158 F.3d 146, 148 (D.C. Cir. 1998), *Universal Health Services*, 770 F. Supp. 704, and *Geisinger Community Medical Center v. Secretary of the U.S. Department of Health and Human Services*, 794 F.3d 383 (3d Cir. 2015), for the contention that preclusion statutes, especially in the Medicare Part A context, should be construed narrowly. But, in all three of these cases, the plaintiffs were challenging general agency rules, regulations, or guidelines, which were subject to review, rather than specific agency decisions, which were not subject to review under the

preclusion provisions. *ParkView*, 158 F.3d at 148 (explaining that judicial review of a reclassification decision was barred, but the plaintiff could challenge general agency regulations); *Universal Health Servs.*, 770 F. Supp. at 710 (explaining that the Medicare Act's preclusion of review of the Secretary's reclassification decisions did not bar judicial review of the validity of the Secretary's guidelines); *Geisinger*, 794 F.3d at 390 (explaining that the court had subject matter jurisdiction because the plaintiff challenged the legality of the reclassification rule, rather than any decision on its application, the review of which would have been barred). Here, Plaintiffs are directly challenging a determination or adjustment made by the Secretary, not a general rule, regulation, or guideline. *See Fl. Health Scis. Ctr., Inc. v. Sec. of Health and Human Servs.*, 830 F.3d 515, 522 (D.C. Cir. 2016) (explaining the difference between a preclusion statute's effect on the challenge to general rules and the challenge to a specific determination). Accordingly, cases holding that preclusion statutes do not bar review of general agency rules, regulations, or guidelines are not relevant to the Plaintiffs' challenge to a specific determination.[2]

Third, Plaintiffs' interpretation of the preclusion statute completely ignores the ultra vires doctrine. Under the ultra vires doctrine, courts have jurisdiction to review an agency's action, despite the presence of a preclusion statute, if that agency action "is *ultra vires*, i.e., beyond the scope of its lawful authority." *Id*. Under the ultra vires doctrine, a bar on judicial review extends

---

[2] Plaintiffs also cite *Southwest Airlines Co. v. Transportation Security Administration*, 554 F.3d 1065 (D.C. Cir. 2009) for the proposition that a preclusion statute does not bar review of the question of whether the agency "has made the kind of determination required by the statute." 554 F.3d at 1071. But, while *Southwest Airlines* does not explicitly mention the ultra vires doctrine, the D.C. Circuit has since explained that *Southwest Airlines* found jurisdiction to review the agency's action under the ultra vires doctrine. *Fl. Health Scis. Ctr., Inc. v. Sec. of Health and Human Servs.*, 830 F.3d 515, 522 (D.C. Cir. 2016). Accordingly, the Court will address Plaintiffs' arguments concerning *Southwest Airlines* in the section on the ultra vires doctrine. *See Infra* Sec. III.2.

"no further than the Secretary's statutory authority to make the challenged determination." *Id.* (internal quotation marks omitted). Plaintiffs' interpretation of the TMA's preclusion statute as allowing judicial review of determinations and adjustments made "in violation" of TMA § 7(b) would completely subsume the ultra vires doctrine.

The hypothetical in Plaintiffs' Opposition demonstrates the overlap between Plaintiffs' interpretation of the TMA's preclusion statute and the ultra vires doctrine. Plaintiffs posit that "if the Secretary had refused to implement the restoration of 0.4588% in 2018, the Secretary apparently would contend that there would be no recourse to the courts to enforce that restoration under the TMA." Pls.' Opp'n, ECF No. 12, 14. But, while the preclusion statute would likely bar judicial review of the Secretary's decision to make an adjustment other than the required +0.4588%, the Court could still review the adjustment under the ultra vires doctrine because the Secretary would have violated a clear statutory directive.

Accordingly, Plaintiffs' argument that the Secretary's +0.4588% adjustment violated TMA § 7(b)(2) by leaving in place a recoupment adjustment from 2017 does not overcome the TMA's preclusion statute. Instead, Plaintiffs' argument should be addressed under the ultra vires doctrine, which will be discussed in more detail below. *See Infra* Sec. III.2.

The TMA's preclusion statute bars judicial review of "any determination or adjustments made under [TMA § 7(b)]." TMA § 7(b)(5). Plaintiffs challenge the Secretary's decision to limit the 2018 adjustment to +0.4588%, which allegedly failed to account for the previous years' additional -0.7% recoupment adjustment. Accordingly, Plaintiffs' challenge falls within the plain language of the TMA's preclusion statute, and judicial review is barred.

## 2. The Ultra Vires Doctrine

Even if the preclusion statute applies to Plaintiffs' claims, the Court may still be able to review those claims under the ultra vires doctrine. Congress has not and cannot limit judicial review to correct a patently unlawful agency action. *See Fla. Health Scis. Ctr.*, 830 F.3d at 522. Under the ultra vires doctrine, an agency action is open to judicial review, even in the face of an applicable preclusion statute, when it "patently misconstrues a statute, disregards a specific and unambiguous statutory directive, or violates a specific command of a statute." *Hunter v. Fed. Energy Reg. Comm'n*, 569 F. Supp. 2d 12, 16 (D.C. Cir. 2008) (internal quotation marks omitted). While application of the ultra vires doctrine does not require a full-blown review of the merits, where "the determination of whether the court has jurisdiction is intertwined with the question of whether the agency has authority for the challenged action … the court must address the merits to the extent necessary to determine whether the challenged agency action falls within the scope of the preclusion on judicial review." *Amgen, Inc.*, 357 F.3d at 113. Reviewing the merits of Plaintiffs' claims to the extent necessary, the Court concludes that the Secretary's action was not patently erroneous; accordingly, the ultra vires doctrine does not provide an avenue for judicial review.[3]

Plaintiffs' claims hinge on the interaction between two provisions of the TMA: § 7(b)(1)(B)(iii) and § 7(b)(2). Section 7(b)(1)(B)(iii), as amended by 21st Century Cures, required the Secretary to make "an increase of 0.4588 percentage points for discharges occurring during fiscal year 2018 and 0.5 percentage points for discharges occurring during each of fiscal years

---

[3] In a footnote, Plaintiffs claim that "the 'patently unlawful' standard described in this section *may* overstate the applicable standard in this case." Pls.' Opp'n, ECF No. 12, 17 n.4 (emphasis added). But, Plaintiffs use the "patently unlawful" standard throughout their argument, and Plaintiffs provide the Court with no alternative standard under the ultra vires doctrine. Nor was the Court able to find a case using a different standard.

2019 through 2023 and not make the adjustment (estimated to be an increase of 3.2 percent) that would otherwise apply for discharges occurring during fiscal year 2018 by reason of the completion of the [ATRA recoupment adjustments]." TMA § 7(b)(1)(B)(iii). The positive adjustments of +0.4588% for 2018 and +0.5% for 2019 through 2023 were meant to recover the negative recoupment adjustments that had been made during fiscal years 2014 through 2017 in order to recoup the $11 billion in overpayments from fiscal years 2010 through 2012. *See* TMA § 7(b)(1)(B)(ii).

Up until 2017, the Secretary had estimated that, in order to recoup the $11 billion overpayment, a negative recoupment adjustment of -0.8% would be needed each year from 2014 through 2017 for a total recoupment adjustment of -3.2%. But, in 2017, the Secretary determined that a recoupment adjustment of -0.8% would not fully recoup the $11 billion overpayment from fiscal years 2010 through 2012. Accordingly, the Secretary required a -1.5% recoupment adjustment for 2017. This additional adjustment meant that the total recoupment adjustment was -3.9% rather than the previously estimated -3.2%.

Plaintiffs argue that the +0.4588% adjustment required by TMA § 7(b)(1)(B)(iii) for fiscal year 2018 was predicated on the 2014 to 2017 recoupment adjustments totaling only -3.2%. Accordingly, Plaintiffs contend that the +0.4588% adjustment for fiscal year 2018 did not account for the additional -0.7% recoupment adjustment in 2017. Because the +0.4588% adjustment left in place the additional -0.7% adjustment from 2017, Plaintiffs argue that the 2018 adjustment violated TMA § 7(b)(2) which mandates that an adjustment for "discharges occurring in a year shall not be included in the determination of standardized amounts for discharges occurring in a subsequent year." TMA § 7(b)(2). Because the 2018 adjustment allegedly violated

TMA § 7(b)(2) by leaving in place a -0.7% recoupment adjustment from 2017, Plaintiffs contend that the Secretary was acting ultra vires and that his actions are subject to judicial review.

But, while Plaintiffs make much of TMA § 7(b)(2)'s prohibition on continuing recoupment adjustments, they minimize and even ignore TMA § 7(b)(1)(B)(iii) which explicitly instructed the Secretary to make a +0.4588% adjustment and "*not make the adjustment … that would otherwise apply* for discharges occurring during fiscal year 2018 by reason of the completion of the [ATRA recoupment adjustments]." TMA § 7(b)(1)(B)(iii) (emphasis added). This provision of the statute is more specific than TMA § 7(b)(2) and was enacted later in time. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) ("The classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute." (internal quotation marks omitted)). Accordingly, while prior to the enactment of TMA § 7(b)(1)(B)(iii), the Secretary had contemplated making a single positive adjustment in 2018 to offset the reductions from 2014 through 2017, Congress revised the TMA and mandated that the Secretary take a different path. Congress ordered the Secretary to "not make the adjustment … that would otherwise apply" and instead to make only a +0.4588% adjustment in 2018. TMA § 7(b)(1)(B)(iii). Congress enacted this requirement, through the 21st Century Cures Act, with the knowledge that the 2017 recoupment adjustment would be -0.7% greater than was previously anticipated. The Secretary's decision to follow the explicit Congressional mandate to implement a +0.4588% adjustment and "not make the adjustment … that would otherwise apply" in 2018, which Congress passed with full knowledge of the greater-than-previously-estimated 2017 recoupment adjustment, was not an ultra vires act. *See United States v. Chase*, 135 U.S. 255, 260 (1890) ("It is an old and familiar rule that where there is, in

the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment." (internal quotation marks omitted)).

Plaintiffs also overplay their reliance on TMA § 7(b)(2). Under TMA § 7(b)(2), "[a]n adjustment made … for discharges occurring in a year shall not be included in the determination of standardized amounts for discharges occurring in a subsequent year." TMA § 7(b)(2). Plaintiffs contend that this section required the Secretary to make an additional +0.7% adjustment in 2018 to account for the additional -0.7% recoupment adjustment in 2017. But, the TMA has not required that the recoupment adjustment of one year be immediately balanced the next year. Even if the Secretary had not increased the 2017 recoupment adjustment by -0.7% in 2017, the Congressionally-required +0.4588% adjustment in 2018 would not have balanced the previously-estimated 2017 recoupment adjustment of -0.8% nor the total estimated recoupment adjustment of -3.2%. Instead, those recoupment adjustments would have been relieved by positive adjustments over time, with +0.5% adjustments during fiscal years 2019 through 2023.[4] And the Secretary has never asserted that he does "not intend to ever restore any recoupment adjustments that would remain after" 2023 and the completion of the adjustments required by TMA § 7(b)(1)(B)(iii). Pls.' Opp'n, ECF No. 12, 7. Instead, the Secretary has declined to specify any adjustments that will be made in future years. Accordingly, the entirety of the -3.9%

---

[4] The Court notes that even if the ATRA recoupment adjustments had totaled only the estimated -3.2%, those recoupment adjustments would not have been fully offset by 2023, the last year referenced in TMA § 7(b)(1)(B)(iii) as the positive adjustments under that section total only approximately 3.0%, not 3.2%. Compl., ECF No. 1, ¶ 44.

recoupment adjustment may yet be balanced by future positive adjustments made another year or made outside the scope of TMA § 7(b)(1)(B)(iii). *See* 79 Fed. Reg. at 49,873; 78 Fed. Reg. at 50,515; 80 Fed. Reg. at 49,345 ("[T]he adjustment required under section 631 of the ATRA is a one-time recoupment of a prior overpayment, not a permanent reduction to payment rates. Therefore, any adjustment made to reduce rates in one year *would eventually be offset by a positive adjustment*, once the necessary amount of overpayment is recovered." (emphasis added)).

Perhaps recognizing the difficulty of contending that the Secretary acted ultra vires when he implemented Congress' explicitly-mandated adjustment for 2018, Plaintiffs make much of TMA § 7(b)(1)(B)(iii)'s parenthetical ordering the Secretary not to make "the adjustment (*estimated to be an increase of 3.2 percent*) that would otherwise apply for discharges occurring during fiscal year 2018." TMA § 7(b)(1)(B)(iii) (emphasis added). Even though the 21st Century Cures amendment to the TMA, requiring a +0.4588% adjustment in 2018, was passed after the Secretary finalized a total -3.9% recoupment adjustment for 2017, Congress did not amend its reference to the +3.2% adjustment. According to Plaintiffs, Congress' decision to continue to include the "estimated to be an increase of 3.2 percent" language limited the net negative adjustment for fiscal year 2018 to -2.7412%, or 3.2% minus 0.4588%. By implementing only a -0.4588% adjustment, Plaintiffs contend that the Secretary in fact implemented a net -3.4412% adjustment for 2018, wrongfully continuing the additional -0.7% recoupment adjustment into 2018.

But, the Court finds that Plaintiffs misunderstand the meaning of the parenthetical, "estimated to be an increase of 3.2 percent." TMA § 7(b)(1)(B)(iii). Plaintiffs argue that Congress' inclusion of the parenthetical limited the net negative adjustment for fiscal year 2018

to -2.7412%, or 3.2% minus 0.4588%. But, this ignores the use of the word "estimated." If Congress meant to restrict the Secretary to a precise net negative adjustment for fiscal year 2018, it makes little sense to include the word "estimated."

When Congress initially revised the TMA through MACRA to include § 7(b)(1)(B)(iii), Congress did not know what magnitude of positive adjustment would be necessary to offset the recoupment adjustments authorized in fiscal years 2014 through 2017. But, at that time, Congress did know that the Secretary had estimated that -3.2% in recoupment adjustments would recover the $11 billion overpayment from 2010 through 2012. *See* 79 Fed. Reg. 49,854, 49,874 (Aug. 22, 2014). Accordingly, Congress likely included "estimated to be an increase of 3.2 percent" to clarify the adjustment to which it was referring when it said, "the adjustment … that would otherwise apply for discharges occurring during fiscal year 2018." TMA § 7(b)(1)(B)(iii).

But, when Congress amended TMA § 7(b)(1)(B)(iii) through 21st Century Cures, Congress would have known that the total recoupment adjustments for fiscal years 2014 through 2017 totaled -3.9% rather than -3.2%. *See* 81 Fed. Reg. 56,762, 56,782-83 (Aug. 22, 2016). Despite this knowledge, Congress did not amend the "estimated to be an increase of 3.2%" language. Plaintiffs fail to provide a reasonable explanation as to why Congress would use the language "estimated to be an increase of 3.2 percent" if it was by that time clear that the adjustment would actually be 3.9%. Instead, the Court concludes that "estimated to be an increase of 3.2 percent" acted as a reference for identifying the adjustment that Congress intended the Secretary to forego, the adjustment that the Secretary had previously "estimated to be 3.2%."

Alternatively, Congress could have continued to use the phrase "estimated to be an increase of 3.2 percent" as a rough calculation based on information available at the time. The

estimation was not intended to convey the specific amount of the adjustment to be foregone; accordingly, Congress did not need to amend the parenthetical when it became clear that the adjustment would actually be 3.9%. Plaintiffs argue that 3.2% cannot be an approximation of 3.9% because of the vast difference between those two numbers. But, the absolute difference is only 0.7, so it is not unreasonable to think that Congress would have been satisfied that "estimated to be an increase of 3.2 percent" approximated the actual increase of 3.9%. Accordingly, under TMA § 7(b)(1)(B)(iii), the adjustment that the Secretary could not apply would be whatever adjustment "would otherwise apply for discharges occurring during fiscal year 2018 by reason of the completion [of the ATRA recoupment adjustments]." TMA § 7(b)(1)(B)(iii).

Reviewing the TMA as well as both parties' arguments, the Court is not prepared to conclude that the TMA clearly required that the Secretary make only a +0.4588% adjustment and no more in fiscal year 2018. But, that is not the relevant question. Instead the Court must decide if the Secretary's 2018 adjustment was an ultra vires act, meaning that he "patently misconstrue[d] a statute, disregard[ed] a specific and unambiguous statutory directive, or violate[ed] a specific command of a statute." *Hunter*, 569 F. Supp. 2d at 16. And, the Court concludes that the Secretary's 2018 adjustment was not an ultra vires act.

This case is not like that cited by Plaintiffs, *Southwest Airlines v. Transportation Security Administration*, 554 F.3d 1065 (D.C. Cir. 2009). In *Southwest Airlines*, the plaintiffs sought to overcome a preclusion statute which barred judicial review of determinations regarding fee limitations. 554 F.3d at 1069. The court found that it had jurisdiction to review the agency's fee determinations despite the preclusion statute because fee determinations were statutorily limited to screening passengers and property, but the agency had wrongfully included costs for screening

non-passengers. *Id.* at 1071-72. The court concluded that it could review the fee determination, despite the preclusion statute, because the agency had clearly exercised authority not granted to it. *Id.*

Here, whether or not the Secretary erred is not nearly so clear. And, because of the TMA's preclusion statute, the Court does not have the authority to weigh the nuances of the statute and determine, on balance, whether or not the Court agrees with Secretary's adjustment. *See Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 494 (D.C. Cir. 1988) (not allowing ultra vires review where the agency's interpretation of the statute was "not the only possible construction of the statutory language, [but was] surely a colorable one"). Instead, the Court is constrained, by the preclusion statute and ultra vires exception, to deciding whether or not the Secretary acted outside the scope of his statutory authority. And, the Court concludes that the Secretary did not act outside the scope of his statutory authority in setting a +0.4588% adjustment in 2018 as explicitly required by Congress under the TMA. TMA § 7(b)(1)(B)(iii) (ordering the Secretary to make "an increase of 0.4588 percentage points for discharges occurring during fiscal year 2018"). Accordingly, review is not permissible under the ultra vires doctrine.

### 3. Plaintiffs' Other Claims

Finally, Plaintiffs argue that even if some of their claims are barred by the preclusion statute, not all of their claims are barred. TMA's preclusion statute prohibits "judicial review under section 1878 of the Social Security Act [] or otherwise of any determination or adjustments made under [TMA § 7(b)]." TMA § 7(b)(5). Plaintiffs' argument concerns only Counts 2 and 3 of their Complaint, apparently conceding that the preclusion statute, if applicable, would prevent judicial review of Counts 1, 4, and 5. The Court agrees with Plaintiffs' apparent

concession.

Count 1 of Plaintiffs' Complaint alleges that the Secretary violated the APA, the Medicare Act, and other statutes by "fail[ing] to restore the [-0.7%] ATRA reduction in FFY 2018" and is clearly barred by the TMA's preclusion statute for the reasons previously explained. Compl., ECF No. 1, ¶¶ 67-70; *see Tx. All. for Home Care Servs. v. Sebelius*, 681 F.3d 402, 408 (D.C. Cir. 2012) (dismissing APA claim in light of similar preclusion statute because the "APA does not apply … to the extent that … statutes preclude judicial review" (internal quotation marks omitted)). Counts 4 and 5 make the same argument as Count 1 but make it under the Mandamus Act and the All Writs Act respectively. Based on the preclusion statute's "or otherwise" language, review of these Counts is also barred. *See Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 506 (4th Cir. 1999) (explaining that the Mandamus Act does not override a specific statute that limits jurisdiction); *see also Telecomm. Research and Action Ctr. v. Fed. Commc'n Comm'n.*, 750 F.2d 70, 76 (D.C. Cir. 1984) (explaining that the All Writs Act "does not expand the jurisdiction of a court"). Accordingly, this Section will focus exclusively on whether or not the TMA's preclusion statute bars review of Counts 2 and 3 in Plaintiffs' Complaint.

Plaintiffs allege that Counts 2 and 3 of their Complaint should survive Defendant's Motion to Dismiss. In Count 2 of the Complaint, Plaintiffs allege that the Secretary violated the APA, the Medicare Act, and other statutes when the Secretary failed to adequately explain the rationale for not applying his "exceptions and adjustments" discretion under 42 U.S.C. § 1395ww(d)(5)(I) to make an additional +0.7% adjustment in 2018, offsetting the 2017 -0.7% recoupment adjustment. Compl., ECF No. 1, ¶¶ 71-72. In Count 3 of the Complaint, Plaintiffs allege that the Secretary violated the APA, the Medicare Act, and other statutes by failing to

address commenters' questions and requests regarding the exercise of his "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I) in implementing the 2018 adjustment. *Id.* at ¶¶ 73-75.

Under 42 U.S.C. § 1395ww(d)(5)(I), the "Secretary shall provide by regulation for such other exceptions and adjustments to such payment amounts under this subsection as the Secretary deems appropriate." 42 U.S.C. § 1395ww(d)(5)(I). Plaintiffs argue that Defendant erred when the Secretary failed to exercise his "exceptions and adjustments" authority under 42 U.S.C. § 1395ww(d)(5)(I) to enact a +0.7% adjustment and when he failed to meet his rulemaking procedural obligations relating to that statute. Defendant contends that judicial review of Plaintiffs' claims concerning 42 U.S.C. § 1395ww(d)(5)(I) is barred because addressing their merits would require the Court to review "any determination or adjustments made under [TMA § 7(b)]." TMA § 7(b)(5).

A court cannot review claims which are "inextricably intertwined" with barred claims because reviewing those claims would have the practical effect of also reviewing the merits of barred claims. *See Heckler v. Ringer*, 466 U.S. 602, 614 (1984). Defendant contends that Counts 2 and 3 of Plaintiffs' Complaint are "inextricably intertwined" with Plaintiffs' barred claims. Defendant argues that the Secretary refused to exercise his discretion under 42 U.S.C. § 1395ww(d)(5)(I) because he determined that the requested +0.7% adjustment was prohibited by TMA § 7(b)(1)(B)(iii). As such, according to Defendant, any assessment of the reasonableness of the Secretary's decision not to apply 42 U.S.C. § 1395ww(d)(5)(I) would necessarily require the Court to consider the merits of the Secretary's determination that TMA § 7(b)(1)(B)(iii) prohibited him from making an additional, discretionary adjustment, a consideration which the preclusion statute explicitly bars.

As evidence that the Secretary refused to exercise his "exceptions and adjustments" discretion based on his determination that the requested +0.7% adjustment was prohibited under TMA § 7(b)(1)(B)(iii), Defendant points to the 2018 IPPS Final Rule. *See* 82 Fed. Reg. 37,990, 38,009 (Aug. 14, 2017). In the cited portion of this final rule, the Secretary summarized several comments relating to the 2018 adjustment. As pertains to the Secretary's "exceptions and adjustments" authority, the final rule summarized that "[c]ommenters also urged CMS to use its discretion under section 1886(d)(5)(I) of the Act to increase the FY 2018 adjustment by 0.7 percentage point." *Id.*

Below the summary of various comments, the final rule has a single paragraph of "response" to those comments. In the response, the Secretary explained that "as we discussed in the FY 2018 IPPS/LTCH PPS proposed rule, we believe the directive regarding the applicable adjustment for FY 2018 is clear." *Id.* But, it is not evident whether this explanation pertained to the Secretary's "exceptions and adjustments" authority or to one of the multiple other comments the final rule summarized. Nowhere in the response did the Secretary explicitly mention his "exceptions and adjustments" authority, nor did he explicitly address the relevant comments. In fact, the Secretary's explanation that "the directive regarding the applicable adjustment for FY 2018 is clear" seems to be make more sense in response to comments which "asserted that CMS' proposal to apply a 0.4588 percent positive adjustment for FY 2018 misinterprets the relevant statutory authority, and urged CMS to align with their view of Congress' intent by restoring an additional +0.7 percentage point adjustment to the standardized amount in FY 2018." *Id.*

Pursuant to 42 U.S.C. § 1395ww(d)(5)(I), the Secretary is provided with independent statutory authority to adopt and implement discretionary exceptions and adjustments separate from those permitted under TMA § 7(b). *See Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692,

699 (D.C. Cir. 2014) (explaining that the Secretary had authority under 42 U.S.C. § 1395ww(d)(5)(I) to adjust the hospital-specific rate for payments). It is not clear from the 2018 final rule, or from any other source provided by Defendant, that the Secretary considered whether or not to grant a +0.7% adjustment under the his "exceptions and adjustments" discretionary authority, despite comments urging him to do so. *See N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 860 (D.C. Cir. 2012) (explaining that "agency action … can be upheld only on the basis of a contemporaneous justification by the agency itself, not *post hoc* explanation of counsel"). While Defendant may be correct in urging that the Secretary declined to exercise his discretionary authority to implement a +0.7% adjustment because he considered it to be prohibited under TMA § 7(b)(1)(B)(iii), Defendant fails to provide any proof for that assertion. Defendant's citation to an ambiguous response in the 2018 final rule, which could apply to any of a number of comments, is insufficient to establish that Counts 2 and 3 are sufficiently intertwined with Plaintiffs' barred claims to overcome the presumption that Congress intends judicial review over administrative actions. *See Universal Health Servs.*, 770 F. Supp. at 710 ("The party seeking to read a legislative scheme to preclude review bears the burden of demonstrating Congress' intent to do so.").

Accordingly, the Court concludes that the TMA's preclusion statute does not bar judicial review of Counts 2 and 3 of Plaintiffs' Complaint. As such, the Court has jurisdiction over these claims and Defendant's motion is denied as to these claims.

### IV. CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss. The Court GRANTS Defendant's Motion as to Plaintiffs' Counts 1, 4, and 5 as those claims are barred by the TMA's preclusion statute and do not fall within the ultra vires exception.

Accordingly, Counts 1, 4, and 5 of Plaintiffs' Complaint are DISMISSED for lack of jurisdiction. But, the Court DENIES WITHOUT PREJUDICE Defendant's Motion as to Plaintiffs' Counts 2 and 3 as those claims are not barred by the TMA's preclusion statute and are not inextricably intertwined with Plaintiffs' barred claims. Accordingly, Plaintiffs may proceed with Counts 2 and 3 of their Complaint.

                                    /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge